Argued October 5, 1977, affirmed February 8, petition for rehearing denied March 14, 1978

OWENS, *Respondent,*

*v.*

WALT JOHNSON LINCOLN MERCURY, INC.,
*Defendant,*
and
FORD MOTOR CREDIT CO., *Appellant.*

(TC 415-106, SC 25061)

574 P2d 642

John M. Berman, Portland, argued the cause for appellant. With him on the briefs were Herbert H. Anderson and Dezendorf, Spears, Lubersky & Campbell.

Robert P. Johnson, Portland, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, Bryson and Linde, Justices, and Gillette, Justice pro tempore.

LINDE, J.

## LINDE, J.

Plaintiff purchased an automobile from defendant Walt Johnson Lincoln Mercury, Inc. (Walt Johnson) in July 1974, trading in an older car and contracting to pay $213.04 monthly for 30 months, beginning September 14, 1974. As part of the transaction, Walt Johnson for an additional $217.30 sold plaintiff life and disability insurance coverage by the National Home Life Assurance Company for the duration of the contract. Walt Johnson assigned its interest in the contract to defendant Ford Motor Credit Company.

Plaintiff did not pay the installments under the contract when they became due on September 14 and on October 14. An employee of the credit company spoke with her at least twice during those months concerning her failure to make these payments. Plaintiff told the employee that she had been ill and asked him how to file a claim for benefits under the disability policy. He directed her to obtain the appropriate forms from Walt Johnson.

On October 25, 1974, Ford Motor Credit Company repossessed the automobile. Plaintiff later attempted to reclaim the car and reinstate the contract by offering the credit company the two delinquent payments, but the offer was refused. The credit company returned the car to the dealer which, in turn, resold the car to another purchaser.

Plaintiff filed the present action against Ford Motor Credit Company and Walt Johnson for conversion of the automobile and of certain personal property alleged to have been in the car when it was repossessed. She also claimed that the repossession of the car was "outrageous and malicious," entitling her to punitive damages.[1] The trial court, sitting without a jury,

---

[1] The record shows some confusion as to plaintiff's theory. At one point, plaintiff's counsel told the trial court: "I never intended for conversion [of the automobile]. I intended outrageous conduct and what they have done is offend the public sensibilities." However, since the case was tried to the

found that plaintiff had not proved the loss of the personal property. It also found that Ford Motor Credit Company's actions were not outrageous or malicious and rejected the claim for punitive damages. However, the court concluded that the credit company had converted the automobile by wrongfully repossessing it and awarded plaintiff damages. No issue is made of the amount of the damages. The case against the dealer, Walt Johnson, was dismissed and is not before us.

On appeal, Ford Motor Credit Company contends that it was entitled to repossess the automobile for defaults in payment under the terms of the retail installment sales contract[2] and ORS 79.5030. That section provides, in pertinent part: "Unless otherwise agreed a secured party has on default the right to take possession of the collateral." Plaintiff argues in turn that the disability insurance coverage, as an integral part of the contract which the credit company acquired from Walt Johnson, limits her exposure to repossession when she informed defendant that illness prevented her from making the installment payment and that she intended to claim the insurance.

The question before the court, therefore, was whether Walt Johnson, the original secured party, had "otherwise agreed" within the meaning of ORS 79.5030 when it included the credit disability insurance provision in the installment sales contract. It hinged essentially on giving effect to the mutual

court without a jury, and the court decided this count of the complaint as one for conversion without objection by the parties, we review the decision upon that theory.

[2]Defendant relies on this contract provision:

Time is of the essence of this contract. In the event Buyer defaults in any payment, . . . Seller shall have the right to declare all amounts due or to become due hereunder to be immediately due and payable and Seller shall have all the rights and remedies of a Secured Party under the Uniform Commercial Code, including the right to repossess the Property wherever the same may be found with free right of entry, and to recondition and sell the same at public or private sale.

understanding of the parties expressed or implicit in this provision. The evidence on that issue was skimpy. A key question is whether the agreement contemplated, in case the buyer was medically disabled, that the insurer was to pay the buyer benefits equivalent to her obligation to the dealer or that the insurer was to make the installment payments directly to the dealer. The record does not show the express terms of the insurance coverage. Plaintiff testified that she never received a copy of the policy or of the application which contained its terms, nor did she receive forms which she later requested for making a claim under it until after her car was repossessed. The sales contract itself states that

> Buyer authorizes Seller to obtain the following insurance coverages:
>
> . . . .
>
> (c) Credit Accident and Health or Disability Insurance on ___ Betty Owens ___ for the term of this Contract.
> (Insured Person)
> Provided by ___ Home Life ___ in accordance with the separate Application, Notice, Certificate or Policy delivered to Buyer this date.

The contract was prepared and the insurance policy was obtained by the dealer. In answer to a question from the court whether, if plaintiff had been disabled, "her payments for that period [would] have been taken care of by the insurance company," Walt Johnson's finance and insurance manager testified that they certainly would have been.

On this record, the trial court could find the agreement of the parties to be that the seller's right to repossess the automobile would be subordinated to collection of unpaid installments from the insurance carrier if plaintiff were disabled within the terms of the coverage, and by implication subordinated also to a fair opportunity to establish eligibility under that coverage. It had no need to decide how long the agreement obligated the seller to wait for a claim to be

filed or settled. The court concluded that Ford Motor Credit Company, which knew of the existence of insurance coverage in the contract it had acquired and knew that plaintiff asserted disability under it, was not entitled to invoke the remedy of repossession until it first ascertained the nature of this insurance coverage and of plaintiff's possible claim. We hold that on the record before the court this conclusion was not error.

Defendant argues that plaintiff did not prove that she was entitled to have the payments made under the insurance policy. In fact she never did file a claim with the carrier. That may be so but is immaterial. Plaintiff is not claiming insurance payments but damages for conversion by wrongful repossession of her automobile; it is defendant who relies upon the contract. If the parties to the contract had "otherwise agreed" as stated above, it does not matter whether plaintiff was or was not disabled within the policy if the seller or its assignee hauled away her automobile before attempting to ascertain whether she was entitled to have them look to the insurer for payment.

Affirmed.