No. 85-546

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

JESSIE H. CLEMANS,

        Defendant and Respondent,

   -vs-

WAYNE MARTIN and JOYCE MARTIN,

        Plaintiffs and Appellants.

_____

APPEAL FROM: District Court of the Twentieth Judicial District,
            In and for the County of Lake,
            The Honorable Robert Holter, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        M. Richard Gebhardt, Ronan, Montana

    For Respondent:

        French, Mercer, Grainey & Duckworth; John Mercer,
        Polson, Montana

_____

Submitted on Briefs: April 4, 1986

Decided: June 5, 1986

Filed: JUN 5 - 1986

*Ethel M. Harrison*
_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Wayne and Joyce Martin (appellants) appeal the August 26, 1985, order of the Twentieth Judicial District Court, County of Lake, denying them a prescriptive easement for a roadway across Jessie Clemans' (respondent) property. We affirm.

Appellants own a forty acre parcel of land on the west slope of the Mission Mountains. Their land is bordered on three sides by land belonging to the Confederated Salish and Kootenai Tribes. Respondent owns the property bordering appellants' land on the west.

There is no road access to appellants' property. This situation was acknowledged in appellants' contract for deed:

> 16. Access. The parties acknowledge that the property being sold hereunder is being sold without access.

Appellants purchased their land from Art Zimmerman in 1983. Zimmerman and his wife had owned the land from 1967 until 1983. Bob Croft had owned the land since sometime prior to 1954 and had sold to Zimmermans. Upon purchasing the property in 1983, appellants filed suit seeking to establish their ownership of a prescriptive easement through respondent's property for access to their property. A bench trial was had. Numerous witnesses testified for both parties.

Art Zimmerman testified that he first entered the subject land in 1937 to haul a load of wood. Zimmerman testified that he believed he gained access to the property via the road in dispute; that the road had no cuts or fills, but was not overgrown with timber or brush; and that it was in better shape than it is now. Zimmerman further stated that he did not seek permission to use the road; however, he had permission to obtain the firewood. While on the property, Zimmerman observed a small cabin, a garden plot and

several vehicles and farm implements. Zimmerman did not return to the property until 1967, when he purchased a car from Bob Croft's estate. Thereafter, Zimmerman decided to purchase the real property.

Next, Zimmerman testified that between 1967 and 1983, he used the roadway approximately three times a year to obtain firewood and Christmas trees. He further stated that the road was inaccessible in the winter. Although there were three gates across the road, they were never locked. Zimmerman merely opened and closed them as necessary for access. Finally, Zimmerman stated on direct examination that he had never sought permission from the Clemans to use the road. However, on cross-examination, he indicated that at Ralph Clemans' request, he had always phoned to say he would be going to the property.

Wendall Putnam testified that he obtained firewood from respondent's property from 1976 to 1982; that he never used the road in question; and that his access to the land was always with respondent's permission. Merle Amerson testified that he leased pasture from respondent and used the road for access to his cattle in 1976, 1977, and from 1980 until 1983. Again, the road was used only with respondent's permission. Amerson never found the gates locked until 1983. At that time, respondent provided him with a key for continued access. Neither witness ever saw anyone else using the disputed road.

Respondent testified that the road in question was built in 1955 by a logging contractor hired to harvest timber on her land. Once the logging was completed, the road was allowed to return to its natural condition. She further testified that neither she nor her husband (now deceased) ever allowed the road to be used without their permission. Even Bob Croft obtained permission to gain access via the road, when he chose to drive to his land.

3

After presentation of all the evidence, the presiding judge visited the site and examined the road in question. Thereafter, he issued an order denying Martins' claim to a prescriptive easement. Following a timely notice of appeal, appellants raise the following issues:

1. Did the District Court err in failing to consider the priority of patents and consequently 43 U.S.C. § 932 (repealed 1976) in the establishment of a right-of-way appurtenant to the homestead on the Martin parcel?

2. Did the Court abuse its discretion in failing to consider and rule upon relevant evidence of a prescriptive easement prior to 1955?

Issue number one is raised for the first time on appeal, apparently in an untimely effort to bolster appellants' position. We have repeatedly refused to consider an issue raised for the first time on appeal. In re the Marriage of Glass (Mont. 1985), 697 P.2d 96, 101, 42 St.Rep. 328, 333. Furthermore, we have held that a party may not advance on appeal a theory of the case different than that relied on below. Donnes v. State ex rel. Superintendent of Public Instruction (Mont. 1983), 672 P.2d 617, 621, 40 St.Rep. 1834, 1838. For these reasons, we refuse to consider appellants' first issue.

In their second issue, appellants contend the trial judge failed to consider evidence that a prescriptive easement existed prior to 1955. We disagree. The only evidence the road existed prior to 1955 was that presented by Art Zimmerman. The trial judge noted his testimony in his order:

> Mr. Zimmerman was on the land belonging to Plaintiffs in 1937. He purchased wood from the then owners of the Plaintiffs' land. His entry was with the consent of the then owners of the Defendant's land.

This statement is an accurate reflection of Art Zimmerman's testimony. Appellants apparently contend that

4

the existence of a cabin and garden plot, as well as the presence of vehicles on the land in 1937, is irrefutable proof that the road was used for access to the property and that this use created a prescriptive easement. The trial judge did not agree. Substantial credible evidence supports his conclusion.

Respondent presented evidence at trial that the road at issue was not created until 1955. Other roads or paths existed in the same area prior to 1955, including an old homestead road. The trial judge found that the subject road did not exist in 1955; that other paths were used for access to the property prior to 1955; and that any access to the property through respondent's land has always been permissive. Unless they are found to be clearly erroneous, we will not set aside the findings of fact of the trial court. Rule 52(a), M.R.Civ.P. In the Matter of the Guardianship and Conservatorship of Tennant (Mont. 1986), 714 P.2d 122, 129, 43 St.Rep. 189, 198. The findings here are clearly supported by the evidence and will not be overturned.

The burden was on appellants to "show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement claimed for the full statutory period." Taylor v. Petranek (1977), 173 Mont. 433, 437, 568 P.2d 120, 122. See also Rathbun v. Robson (Mont. 1983), 661 P.2d 850, 851-52, 40 St.Rep. 475, 477. The statutory period is five years. Section 70-19-401, MCA. Because appellants were unable to prove adverse or continuous use for the five year period immediately prior to the filing of this suit, they are now relying on an historical adverse use which is refuted by the facts adopted by the trial court.

Lastly, appellants object to the form of the trial judge's order because it does not list specific findings of fact separate and distinct from the conclusions of law and judgment. Rule 52(a), M.R.Civ.P. requires that "the court

5

shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered. . . ." In In Re the Marriage of Barron (1978), 177 Mont. 161, 164, 580 P.2d 936, 938, we held that if a trial judge's findings and conclusions are clear to this Court, failure to state them in the recommended form is not substantial error. Here, the trial judge's facts are clear, as are his conclusions. Although Rule 52(a), M.R.Civ.P. specifies the preferred format, we find no error.

The judgment of the trial court is affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices