No. 88-462

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

———————————————

DENNIS SCHAUB,

      Claimant and Appellant,

   -vs-

VITA RICH DAIRY, Employer,
     and
STATE COMPENSATION INSURANCE FUND,

      Defendant and Respondent.

———————————————

APPEAL FROM:  The Workers' Compensation Court, The Honorable Timothy
              Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        John B. Whiston; Rossbach & Whiston, Missoula,
        Montana

    For Respondent:

        R. Scott Currey, Agency Legal Services Bureau,
        Helena, Montana

———————————————

Submitted on Briefs:  Feb. 9, 1989

Decided:  March 9, 1989

Filed: FILED '89 MAR 9 PM 11 06 ED SMITH CLERK MONTANA SUPREME COURT

———————————————
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from an order of the Workers' Compensation Court, adopting the findings and conclusions of Hearing Examiner Robert Campbell. We reverse.

The claimant, Dennis Schaub, was employed by Vita-Rich Dairy in Havre, Montana. On October 15, 1984, claimant suffered an injury when a bag of flour fell from the stack he was unloading, pulling his arm and causing a burning sensation. Claimant immediately reported the accident to his shift supervisor, who indicated he would complete the necessary paperwork for filing a compensation claim. Despite numerous reminders from the claimant and the supervisor's corresponding assurances, the claim for compensation was not filed.

The same day of the injury, claimant sought medical attention from Dr. J. E. Elliot. In turn, Dr. Elliot referred him to Mr. R. Don Tigny for physical therapy. Mr. Tigny noted claimant's related "onset of pain in the neck and lower back area when lifting sacks of flour." Claimant testified that as a result of the physical therapy, he experienced only minor pain and soreness for the next four months. However, claimant's condition deteriorated after a few months, and he began to experience problems with his shoulder, neck and severe headaches.

In May, 1985, less than eight months after the injury, Mrs. Schaub contacted Ardele Kulbeck, the owner of Vita-Rich Dairy, to inquire whether the medical bills and prescriptions would be paid by workers' compensation. Mrs. Kulbeck replied that the injury was not compensable. In November, 1985, Mrs. Kulbeck received a letter from the Division of Workers' Compensation, advising her that the Division had received notice of a possible injury to claimant dated October 15,

2

1984, and requesting she file an Employer's First Report of Injury. The letter resulted from the filing of a medical bill by a health care provider. In response, Mrs. Kulbeck stated that the injury was not job related.

On April 21, 1986, claimant filed a claim for compensation. The Division rejected a requested waiver of the twelve month statute of limitations and denied compensation. At trial, Hearing Examiner Robert Campbell found the claimant barred from benefits by his failure to file a claim for compensation within twelve months of his injury. In addition, claimant did not meet the requirements of equitable estoppel necessary to waive the twelve month filing requirement. On August 2, 1988, the Workers' Compensation Court adopted the Hearing Examiner's findings and conclusions and entered judgment.

The sole issue on appeal is whether the doctrine of equitable estoppel should be applied to estop the defendant from asserting a statute of limitations defense. We believe the doctrine is applicable in the instant case.

Initially, we note the standard of review applied in workers' compensation matters. As to questions of fact, we limit our examination to the record to determine if substantial credible evidence exists to support the court's findings. Wassberg v. Anaconda Copper Co. (1985), 215 Mont. 309, 697 P.2d 909; Weigand v. Anderson-Meyer Drilling Co. (Mont. 1988), 758 P.2d 260, 45 St.Rep. 1138. However, if the issue is one of law, we are not so restricted in our review. "In such a case, the appropriate standard of review is simply whether the lower court's interpretation of the law is correct. We are not bound by the lower court's conclusion and remain free to reach our own." Wassberg, 697 P.2d at 912. The instant case deals with an issue of law. We accept the following relevant findings of fact made by the lower court:

3

11. Claimant, with the aid of his employers, had previously filed four workers' compensation claims between 1977 and 1984. (Depo. of claimant at 20-26.)

12. The procedure at Vita Rich Dairy directed the claimant to report any injury to his foreman (Dan Schaub), and then to the plant supervisor (Rich Semans). Mr. Semans would go to the office and have the paperwork (Form 37 Employer's First Report--Form 54 Claim for Compensation) prepared and brought to the claimant for his signature. (Depo. of claimant at 24.)

13. The morning of the October 15, 1984 injury, the claimant testified that he notified his foreman (Dan Schaub) of the injury and was told to report it to plant superintendent (Rich Semans) also. (Depo. of claimant at 27.)

14. Claimant reported the injury to Mr. Semans in the lunchroom that morning and was told, "OK, I'll take care of it." (Id.) Fellow employee (Kevin Christiansen) was in the lunchroom at the time and testified at the trial that he did hear the claimant tell Mr. Semans about the injury he had received that shift. (Trans. at 33, 36.) Mr. Christiansen denied telling Rich Semans earlier that he had no recollection of claimant's statement to Mr. Semans. (Trans. at 36, 74.)

15. Within three weeks, the claimant asked Mr. Semans three times if "it has been taken care of" and his responses went from "I'll take care of it," to a sarcastic, "No, but I'll do it. I'll take care of it." (Id. at 28.)

16. Rich Semans testified by deposition and at trial that he had no recollection of a lunchroom conversation or reminders from the claimant to complete a claim for his injury in October, 1984. (Depo. of R.L. Semans at 22; Trans. at 77-78.)

4

We disagree with the lower court's application of the facts to the law. From our review, these facts speak of estoppel.

Section 39-71-601, MCA (1985), provides in pertinent part:

> Statute of limitations on presentment of claim-waiver. (1) In case of personal injury or death, all claims shall be forever barred unless presented in writing to the employer, the insurer, or the division, as the case may be, within 12 months from the date of the happening of the accident, either by the claimant or someone legally authorized to act for him in his behalf . . .

While the provision is mandatory, it is not without exception. Through the years, this Court developed and continues to recognize an estoppel exception. See, Lindblom v. Employers' Liability Assurance Corp. (1930), 88 Mont. 488, 295 P. 1007; Levo v. General-Shea-Morrison (1955), 128 Mont. 570, 280 P.2d 1086; Frost v. Anaconda Co. (1982), 198 Mont. 216, 645 P.2d 419. While certainly not a novel theory, Dean Larson explained its application in his oft-quoted treatise:

> A familiar defense to assertion of the bar of late claim is the plea that the lateness was the result of the employer's assurances, misrepresentations, negligence or even deliberate deceptions. . .
>
> The commonest type of case is that in which a claimant . . . contends that he was lulled into a sense of security by statements of employer or carrier representatives that "he will be taken care of" or that his claim has been filed for him or that a claim will not be necessary because he would be paid compensation benefits in any event.

3A Larson, Workmen's Compensation Law, § 78.45. This Court has seen fit to apply the doctrine only when the employer has taken some positive, affirmative action which either prevents

the claimant from making a claim or leads him to reasonably believe he need not file such a claim.  Ricks v. Teslow Consolidated (1973), 162 Mont. 469, 481, 512 P.2d 1304, 1311.

In *Lindblom*, we set forth the elements necessary to find an estoppel:

> 1. There must be conduct—acts, language, or silence —amounting to a representation or a concealment of material facts.  2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when it was acted upon by him.  4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon . . . 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it.

*Lindblom*, 295 P. at 1009.

Relying on the employer's own policy, claimant gave proper notice to the supervisor.  With the supervisor's repeated assurances, claimant reasonably thought his claim would be promptly filed.  This belief is aptly supported by the fact that on each of the four prior industrial accidents, the employer filed all the necessary papers to the Workers' Compensation Division, including the Employer's First Report of Injury and claimant's Claim for Compensation.  This fact

6

remained undisputed throughout the testimony. Clearly, elements one, two and three of the <u>Lindblom</u> test were satisfied. Because the procedure was well established among both employees and management, it appears more than probable that the claimant would rely to his detriment upon his supervisor's repeated assurances. Indeed, the claimant did not file a claim and was thereafter denied compensation. The final three criteria are met.

The order of the Workers' Compensation Court adopting the findings and conclusions of Hearing Examiner Robert Campbell is hereby reversed and remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices