CHIEF JUSTICE TURNAGE
delivered the Opinion of the Court. The Department of Revenue (DOR) appeals an order of the First Judicial District Court, Lewis and Clark County, which granted tax-exempt status to cattle owned by Steer, Inc. (Steer), on the basis that the cattle were property owned by an “institution of purely public charity” under §§ 15-6-201(1) (e), and -201(2) (a), MCA. This holding *472 reversed a prior decision of the State Tax Appeal Board (STAB). We reverse the District Court’s order.
DOR raises the following issues:
1. Did the District Court err in finding STAB’s Findings of Fact IX and XI clearly erroneous?
2. Did the District Court err by failing to remand the case to STAB for suitable findings when it found STAB’s Findings of Facts IX and XI clearly erroneous?
3. Did the District Court err when it held that tax-exempt property of an institution of purely public charity need only be owned, and not used, by the institution?
4. Did the District Court err when it found that the requirements of a purely public charity did not preclude uses that are significantly non-charitable in nature?
5. Did the District Court hold that the dissemination of religious teachings is a charitable purpose qualifying the institution for a property tax exemption, and if so, was this an error?
6. Did the District Court err when it found that the production of revenue from property is a charitable purpose qualifying the institution for a property tax exemption?
7. Did the District Court err when it found that the beneficiaries of an institution of purely public charity do not have to be persons who would otherwise be the recipients of aid from local or state Montana governments?
FACTS
Steer, a non-profit North Dakota corporation, conducts a stewardship program that raises funds, and in turn, donates these funds to member evangelical organizations. This unique stewardship program, which originated in 1956 and is currently operating in twenty-eight states, creates a three-way partnership between a donor, a farmer, and a member evangelical organization.
A donor contributes $600.00 increments to Steer, and receives a one-time tax deduction for the charitable contribution. Steer then purchases a livestock unit with each $600.00 contribution.
Steer places the livestock unit with a farmer. The farmer agrees to provide free feed and care to the livestock unit, as well as its offspring. The farmer sells the livestock’s offspring in Steer’s name, and forwards all of the profits from the sale to Steer. The farmer’s costs associated with the care of the livestock unit are tax deductible.
*473 Steer then donates all profits, less twenty-seven percent for administrative and insurance costs, to a member evangelical organization, which can be designated by the donor or farmer. To be a member, an evangelical organization must complete an application and be approved by Steer’s Board of Directors. Once selected, the member evangelical organization must pay Steer an annual membership fee.
The livestock unit is reinvested in this stewardship program and continues to yield profit which is donated to member evangelical organizations until it is too old to produce. The old livestock is then culled and sold, whereby, again, all sale profits go to Steer for distribution to member evangelical organizations. Steer currently has approximately 100 head of cattle in Garfield County, Montana.
From 1982 to 1987, Garfield County’s Assessor classified Steer’s then approximate seventeen cattle as taxable property under § 15-6- 136, MCA, and assessed Steer $485.92 in taxes. Steer appealed to the Garfield County Tax Appeal Board for a refund on April 22,1987 — this appeal was denied. On June 29,1987, Steer further appealed to STAB.
On January 30,1989, STAB denied Steer’s appeal on the basis that Steer did “not advance a charitable purpose. The evidence establishes that the cattle are raised and sold for a profit. The profit is used to advance and further evangelical gospel and doctrine.”
Steer petitioned for judicial review on March 24,1989. On December 18, 1989, the District Court reversed and remanded STAB’s decision, and held that Findings of Fact IX and XI were clearly erroneous:
“Steer, Inc. objects to STAB’s Finding of Fact IX which states that ‘[e]ach missionary recipient has as its principal purpose the dissemination of evangelical gospel and principles.’ Because this finding ignores its commitment to providing services and goods to the needy, Steer, Inc. argues, it shows that STAB failed to look beyond the religious aspect of Steer Inc.’s organization. STAB also found in Finding of Fact XI that ‘[t]he evidence in the case establishes that the cattle and the property owned by Steer, Inc. are not used for any purpose other than the purposes set forth in the Findings of Fact above.’ These findings are clearly erroneous based upon the evidence on the record.”
The District Court further stated that STAB ignored testimony that stated that Steer’s funds were used in projects “that were charitable rather than strictly evangelistic” such as a hospital *474 construction and educational contributions. From this decision, DOR appeals.
STANDARD OF REVIEW
We recognize that in the past this Court has interpreted § 2-4-704, MCA, the standards for judicial review of an administrative ruling, to mean that an agency’s findings of fact are subject to a “clearly erroneous” standard and agency’s conclusions of law are subject to a broader “abuse of discretion” standard. City of Billings v. Billings Firefighters (1982), 200 Mont. 421, 430, 651 P.2d 627, 632; P.W. Berry Co., Inc. v. Freese (1989), 239 Mont. 183, 188, 779 P.2d 521, 524 (Citations omitted). “[A] finding is ‘clearly erroneous’ when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed.” Wage Appeal of Montana State Highway Patrol Officers v. Board of Personnel Appeals (1984), 208 Mont. 33, 40, 676 P.2d 194, 198 (Citations omitted). “Appellants carry the burden of showing prejudice from a clearly erroneous decision. “ Terry v. Board of Regents of Higher Education (1986), 220 Mont. 214, 217, 714 P.2d 151, 153 (Citations omitted). An agency’s conclusions of law will be reversed for abuse of discretion “[wjhere it appears that the legislative intent is clearly contrary to agency interpretation.” Billings Firefighters, 200 Mont. at 431, 651 P.2d at 632.
In the future, we will continue to use the “clearly erroneous” standard for reviewing findings of fact. However, in reviewing conclusions of law, our standard of review will be merely to determine if the agency’s interpretation of the law is correct, instead of applying the inappropriate abuse of discretion standard.
In the past, we have applied this standard when reviewing conclusions of law of the Workers’ Compensation Court. See Sharp v. Hoerner Waldorf Corp. (1978), 178 Mont. 419, 423, 584 P.2d 1298, 1301; Wassberg v. Anaconda Copper Company (1985), 215 Mont. 309, 315, 697 P.2d 909, 912; Schaub v. Vita Rich Dairy (1989), 236 Mont. 389, 391, 770 P.2d 522, 523. The reasoning for simply determining if the court’s conclusions are correct is that no discretion is involved when a tribunal arrives at a conclusion of law — the tribunal either correctly or incorrectly applies the law. For that reason, this Court concludes that our standard of review relating to conclusions of law, whether the conclusions are made by an agency, workers’ compensa *475 tion court, or trial court, is whether the tribunal's interpretation of the law is correct.
Our standard of review relating to conclusions of law is not to be confused with our review of discretionary trial court rulings. This has been defined as “encompassing the power of choice among several courses of action, each of which is considered permissible.” See Aldisert, The Judicial Process, 1976, page 759.
Such rulings are usually trial administration issues, scope of cross-examination, post-trial motions, and similar rulings. The standard of abuse of discretion will be applied to these rulings.
ANALYSIS
Because we find reversible error involving two of the seven issues presented on appeal, we will limit our discussion to 1) whether the District Court erred in finding STAB’s Findings of Fact IX and XI clearly erroneous, and, 2) whether the District Court erred when it held that tax-exempt property of an institution of purely public charity need only be owned, and not used, by the institution.
1. Did the District Court err in finding STAB’S Findings of Fact IX and XI clearly erroneous?
STAB’s Findings of Fact IX and XI read as follows:
“IX
“Each missionary recipient has as its principal purpose the dissemination of evangelical gospel and principles.
‘XI
“The evidence in the case establishes that the cattle and the property owned by Steer, Inc. are not used for any purpose other than the purposes set forth in the Findings of Fact above.”
DOR asserts that the District Court incorrectly found Findings of Fact IX and XI clearly erroneous because contrary to the District Court’s holding, STAB did not ignore the fact that Steer, in part, supports charitable projects. Rather, DOR argues that STAB correctly found that Steer’s member evangelical organizations’ principal purpose is to disseminate evangelical gospel and principles. “Principal,” here, does not mean “exclusive” — STAB used the word “principal” to put into perspective Steer’s religious activities compared to its charitable activities.
Additionally, DOR argues that STAB’s Finding of Fact XI properly distinguishes that when considering whether personal property is tax-exempt under Mont. Const. Art. VIII, § 5(1), and §§ 15-6-201(l)(e) *476 and -201(2) (a), MCA, it is the use of the personal property and not the ownership that is determinative. Here, DOR argues that Steer used its cattle exclusively as a capital investment for the production of revenue, which in turn, was donated to member evangelical organizations — Steer was not directly using the cattle as a source of food for the needy.
Finally, DOR argues that the record is void of evidence that Steer was prejudiced by STAB’s decision or that STAB made a mistake. Accordingly, DOR argues that the District Court had no basis to find Findings of Fact IX and XI clearly erroneous in light of Terry and Wage, supra.
We agree with DOR’s arguments. The record indeed contains substantial evidence to support STAB’s finding that Steer’s member evangelical organizations’ principal purpose was the dissemination of evangelical gospel and principles. This finding does not ignore the fact that Steer conducts charitable activities; it does, however, properly balance its charitable activities in relation to its primary, religious activities. Furthermore, we agree with DOR that when considering tax-exempt status, it is the use of the property that is determinative rather than the ownership of the property. See Flathead Lake Methodist Church Camp v. Webb (1965), 144 Mont. 565, 570, 399 P.2d 90, 93. Steer exclusively used the cattle as a capital investment to produce funds, which in turn, were donated to member evangelical organizations that provide beneficial services to the needy; Steer did not directly use the cattle to feed needy people. Finally, we hold that STAB’s decision did not prejudice Steer and the record does not reveal that STAB made a clearly erroneous mistake. Therefore, based on the standards of review under Terry and Wage, the District Court incorrectly found STAB’s Findings of Fact IX and XI clearly erroneous.
2. Did the District Court err when it held that tax-exempt property of an institution of purely public charity need only be owned, and not used, by the institution?
Steer, through its innovative stewardship program, provides a valuable service by raising funds which, in turn, are donated to needy people world-wide. However, the fact that Steer’s unique fund-raising method produces worthwhile results through its member evangelical organizations does not negate its tax obligations under Montana constitutional and statutory mandate. We have already held that Steer’s use of its cattle as a capital investment was determinative in deciding that it did not qualify for a tax-exemption based on being an *477 “institution of purely public charity.” We feel, however, that this case requires us to further clarify “institutions for purely public charity.”
In order to receive tax-exempt status, Steer’s cattle must qualify as “institutions of purely public charity’ under Mont. Const. Art. VIII, § 5(1), and §§ 15-6-201(1) (e) and -201(2) (a) MCA.
The primary focus is whether “institution” means entity or property.
Mont. Const. Art. VIII, § 5(1) provides:
“(1) The legislature may exempt from taxation:
“(a) Property of the United States, the state, counties, cities, towns, school districts, municipal corporations, and public libraries, but any private interest in such property may be taxed separately.
“(b) Institutions of purely public charity, hospitals and places of burial not used or held for private or corporate profit, places for actual religious worship, and property used exclusively for educational purposes.
“(c) Any other classes of property. [Emphasis added.]”
Section 15-6-201(1) (e), MCA, provides:
“(1) The following categories ofproperty are exempt from taxation:
“(e) institutions of purely public charity [Emphasis added]”.
Section 15-6-201(2) (a), MCA, provides:
“(2)(a) The term ‘institutions of purely public charity includes organizations owning and operating facilities for the care of the retired or aged or chronically ill, which are not operated for gain or profit.”
Exemptions from property taxation are to be strictly construed. Cruse v. Fischl (1918), 55 Mont. 258, 265-66, 175 P. 878, 881; Town of Cascade v. Cascade County (1926), 75 Mont. 304, 308, 243 P. 806, 807; Flathead Lake Methodist Camp v. Webb (1965), 144 Mont. 565, 573, 399 P.2d 90, 94-95; Old Fashion Baptist Church v. Montana Dep't of Revenue (1983), 206 Mont. 451, 455, 671 P.2d 625, 627. Taken together, the Montana Constitution and the Montana legislative acts intend “institutions” to mean property or place employed for purely public charitable purposes or activities rather than an entity. The cattle are property and tax is imposed on property. If it is charitable property in its purpose and employment and not for profit or gain of income, taxes áre not imposed. Here, the cattle’s employment was for the gain of income, and therefore, the cattle are taxable.
*478 Mont. Const. Art. VIII, § 5(1) provides that the legislature may exempt property from taxation. The exemptions of property from taxation is clearly left to the discretion of the legislature and as noted, are to be strictly construed. The history and provisions of § 15-6-201, MCA, reflect the many times when this section of the code has been amended to add property to the list of exempted items, which includes such items as residences of the clergy to a bicycle used for personal transportation of the owner. The judiciary may not add livestock to the list of exemptions. Accordingly, we reverse the District Court and hold that Steer’s cattle do not qualify as “institutions of purely public charity,” and therefore, are not tax-exempt.
Reversed.
JUSTICES HARRISON, BARZ, HUNT and MCDONOUGH concur.