No. 90-196

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

ART WEAVER, on his own behalf and
on behalf of Weaver-Maxwell, Inc.,
a Montana corporation,

Plaintiff and Appellant,

-vs-

LAW FIRM OF GRAYBILL, OSTREM, WARNER
& CROTTY, and Leo Graybill, Jr.,
Gregory H. Warner and Turner Graybill,

Defendant, Cross-Appellant
and Respondents.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Art Weaver, Kalispell, Montana, Pro Se

For Respondent:

Robert J. Emmons, Esq.; Emmons & Sullivan, Great
Falls, Montana

Submitted on Briefs: September 27, 1990

Decided: December 31, 1990

FILED

'90 DEC 31 AM 10 47

ED SMITH, CLERK
MONTANA SUPREME COURT

Filed:

Clerk

Justice Diane G. Barz delivered the Opinion of the Court.

Art Weaver, appearing pro se, appeals from the summary judgment granted to defendants, his former attorneys, in the District Court for the Eighth Judicial District, Cascade County. We affirm.

Weaver's brief does not set forth a statement of the issues he wishes to raise on appeal. However, his position can be summarized as a view that issues of material fact preclude summary judgment on each of the eight counts of his complaint.

Weaver, his wife, and another couple, the Maxwells, were the stockholders of Weaver-Maxwell, Inc., which operated a farm equipment store in Great Falls, Montana, and Weaver-Maxwell Havre, Inc., which operated a farm equipment store in Havre, Montana. In August 1980, the defendants agreed to represent both corporations and the individual stockholders in potential litigation against Northwestern Bank of Great Falls and International Harvester (IH). The parties agreed that defendants would be paid 30% of the recovery if the cases were tried.

In October 1980, Northwestern Bank sued Weaver-Maxwell, Inc., and its stockholders, who filed counterclaims. Weaver-Maxwell, Inc., was awarded a judgment of $2,659,671 after a March 1985 jury trial. This Court reversed that judgment and ordered a new trial. Northwestern Nat. Bank v. Weaver-Maxwell (1987), 224 Mont. 33, 729 P.2d 1258. The parties eventually settled the case in January 1988, with Northwestern Bank paying $1,000,000 to the counter-claimants and $300,000 to defendants, their attorneys.

2

In April 1982, Weaver-Maxwell, Inc., sued IH in Federal District Court. IH filed an interpleader and third party action joining Weaver-Maxwell Havre, Inc., and its stockholders. In January 1985, a federal district court jury awarded Weaver-Maxwell Havre, Inc., a $1,000,000 judgment against IH and awarded IH a $40,000 judgment against Weaver-Maxwell, Inc. Both sides gave notice of appeal. In June 1985, the parties settled the case when IH paid $720,000. Of that amount, $40,000 went to Art Weaver for payment of costs; 30% of the balance, or $204,000, was paid to defendants; and the remaining $476,000 was divided equally among the four shareholders.

Art Weaver filed this lawsuit in January 1988. His amended complaint contains eight counts which may be summarized as follows:

Count I - a claim that defendants overcharged fees.

Count II - a claim for interest on the settlement with Northwestern Bank due to defendants' delay in filing the action.

Count III - a claim for compensation for the loss of a Burger King franchise in Bozeman.

Count IV - a claim for compensation for two motor homes repossessed by Northwestern Bank.

Count V - a claim based on the failure to file a timely antitrust claim in the IH action.

Count VI - a claim for prejudgment interest for the IH case.

Count VII - a claim that defendants' malpractice resulted in lower settlements in both cases.

Count VIII - a claim for the proceeds of the "Stroh contract."

3

After discovery, the defendants moved for summary judgment. Finding that there is no genuine issue of material fact and that there was no legal malpractice, the District Court granted summary judgment to the defendant attorneys.

Did issues of material fact preclude summary judgment on each of the eight counts in the complaint?

Rule 56(c), M.R.Civ.P., provides that summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions, and any affidavits on file show that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Our standard of review is whether the trial court was correct. Steer, Inc. v. Department of Revenue (Mont. December 11, 1990), No. 90-106, slip op. at 6.

Initially, we will discuss the limits placed upon Weaver's claims by his pro se status. While, as Weaver contends, shareholders and directors of a corporation have the right to "take action" on the corporation's behalf under § 35-1-930, MCA, that does not entitle those persons to practice law on behalf of the corporation. A corporation is a separate legal entity and cannot appear on its own behalf through an agent other than an attorney. Annotation, Propriety and Effect of Corporation's Appearance Pro Se, Through Agent Who Is Not Attorney, 19 A.L.R.3d 1073 (1968). Therefore, Weaver cannot represent Weaver-Maxwell, Inc., or Weaver-Maxwell Havre, Inc. Weaver cannot appear on behalf of his wife or the Maxwells, either, without being guilty of contempt of court.

4

Section 37-61-210, MCA. Therefore, the only claims which we consider, and the only damages which could be awarded, are those of and to Weaver individually. We will discuss each count of the complaint separately.

Count I. The attorney fees on the Northwestern Bank case were $300,000 on a $1,300,000 settlement. Prior to the settlement, Weaver had informed defendants that he would accept no less than $1,000,000 in settlement and that they should negotiate for their fee, which would have to come out of the settlement amount above $1,000,000. That demand was met. The actual attorney fees were also less than the originally agreed upon fee of 30%.

Weaver further claims that he was overbilled for out-of-pocket expenses. Under the original fee agreement, out-of-pocket expenses were to be billed in addition to the 30% fee agreed upon. That arrangement was carried out. The amount of out-of-pocket expenses was large and was apparently larger than originally anticipated. However, after examining the record, we conclude that no grounds have been shown to support the claim of excessive fees.

Count II. The exhibits attached to both parties' briefs indicate that an inability on the part of Weaver and defendants to agree upon defendants' fees was largely responsible for delays in the Northwestern Bank case between 1980 and 1983. That in itself is not a basis for charging defendants with willful delay under § 37-61-407, MCA. Weaver's claim that defendants purposefully delayed action in the Northwestern Bank matter because they wished to wait for Turner Graybill to finish law school and join the firm

5

is completely without support in the record.

Count III. In the Northwestern Bank trial, defendants offered a special verdict question addressed to the loss of the Burger King franchise. It was rejected. However, the issue was before the jury because Instruction No. 30A specifically allowed for an award of damages for the loss of the franchise. We conclude that the claim for the loss of the franchise was dealt with as part of that trial and eventual settlement and that the present claim is therefore without merit.

Count IV. The defendants' alleged wrongful failure to obtain lien releases from Northwestern Bank on two of Weaver's motor homes occurred in 1981. Weaver knew of this failure at that time. A three-year statute of limitations applies. Yet Weaver did not file his complaint against defendants until 1988, well beyond the time allowed under the statute. We conclude that the District Court was correct in ruling that this claim is barred by the statute of limitations.

Counts V and VI. These two counts relate to the IH case. Weaver, individually, was not a plaintiff in the IH case. He, individually, cannot claim any damages from any mishandling of that case by defendants. Therefore we will not consider the claims raised in Counts V and VI.

Count VII. To succeed, Weaver's claim of malpractice must be supported not only by a showing of malpractice by defendants, but by a showing that "but for" their negligence, he would have recovered additional amounts from Northwestern Bank. Kinniburgh

v. Garrity (Mont. 1990), 798 P.2d 102, 105, 47 St.Rep. 1655, 1659. Weaver has utterly failed to do that. After consideration of the claims presented above, there is nothing to support Weaver's claim that a higher negotiated settlement should have been obtained on the Northwestern Bank case. Certainly on its face and after the reversal of the jury verdict by this Court, the court-approved settlement appears favorable to Weaver. We hold that the court was correct in entering summary judgment for defendants on this count.

Count VIII. Disposition of the proceeds of the Stroh contract was included in the settlement agreement with Northwestern Bank. Although the specifics of the settlement were sealed and are not in the record before this Court, correspondence between Weaver and the defendants shows that they specifically discussed releasing the proceeds of the Stroh contract during settlement and that Weaver agreed to the settlement. The settlement included the proceeds of the Stroh contract. The present claim is without merit because Weaver has already been compensated, in the settlement, for the Stroh contract proceeds.

Weaver claims that defendants wrongfully failed to release to him a transcript of the Northwestern Bank trial which he had requested as part of discovery. He submitted to the District Court a "Request to order defendants to produce responses" which, although difficult to decipher, asked that the court order defendants to produce these transcripts. However, as defendants' counsel points out, the copy of the transcript in defendants' possession was prepared at the expense of Northwestern Bank for the

7

appeal to this Court. It was not Weaver's. Weaver could have obtained a copy of the transcript through the court reporter. Where the discovery sought is obtainable through some other source that is more convenient, less burdensome, or less expensive, a court may limit the frequency or extent of discovery. Rule 26(b)(1), M.R.Civ.P. We hold that there is no reversible error in the court's failure to grant Weaver's discovery request.

In his briefs before this Court, Weaver makes various other claims which were not set forth in his complaint or before the District Court. This Court will not consider issues or theories of the case first raised on appeal. Clemans v. Martin (1986), 221 Mont. 483, 485, 719 P.2d 787, 789.

In conclusion, our examination of the record and transcript shows that Weaver's claimed issues of fact do not have merit as a basis for appeal because none of them involve material issues of fact. We hold that the District Court was correct in granting summary judgment for defendants.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

8

John C. Sheehy

_____

John Conway Harrison

Justices

9