No. 91-542

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

MARLAN ENTRIKEN,

      Plaintiff and Respondent,

v.

MOTOR COACH FEDERAL CREDIT UNION,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            James M. Ramlow, Murray & Kaufman,
            Kalispell, Montana

      For Respondent:

            David J. Wing, Attorney at Law,
            Butte, Montana

**FILED**

Filed: DEC 23 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  March 12, 1992

Decided:  December 23, 1992

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Plaintiff Marlan Entriken brought suit against defendant Motor Coach Federal Credit Union in the District Court for the Second Judicial District Court, Silver Bow County, alleging defendant converted his truck. The District Court, sitting without a jury, found that defendant's repossession of plaintiff's truck constituted the tort of conversion. The District Court awarded actual damages of $18,711.20, treble damages under the Montana Unfair Trade Practices and Consumer Protection Act of 1973 [Montana Consumer Protection Act] in the amount of $56,133.60, and attorney fees of $9,540.00 for a total judgment of $84,384.80. From this judgment, defendant appeals. We affirm in part and reverse in part.

Appellant presented eight issues for review by this Court. We phrase the issues before this Court as follows:

1. Did appellant's repossession of respondent's vehicle constitute conversion?

2. Did the District Court err in determining respondent's damages?

3. Did the District Court err in awarding respondent attorney fees in the action below?

Respondent purchased a new 1989 GMC pickup truck in November 1988. At the time of the purchase, respondent was employed by Greyhound Lines, Inc. (Greyhound) and lived in Oregon. Respondent was a member of appellant Motor Coach Federal Credit Union in Portland, Oregon, a credit union for Greyhound employees.

2

Respondent financed the purchase of the vehicle through appellant, which paid to the automobile dealer the full purchase price of $11,589.15. Respondent entered into a financing agreement with appellant entitled a One-Way Loan Disclosure and Agreement which also incorporated a payoff of a prior loan in the amount of $2,038.35. Additionally, respondent purchased credit disability insurance with a premium of $1,057.80 from Life Assurance Company of Pennsylvania (LACOP). The cost of the credit disability insurance was added to the loan, making the total loan $14,685.30. Appellant received ten percent of the insurance premium as a commission, a fact not disclosed to respondent at the time of the transaction. Appellant also obtained a security interest in the vehicle. Respondent authorized his employer to deduct the sum of $182 from each paycheck and apply this amount directly to his loan with appellant.

Loan payments were deducted from respondent's paychecks until February 13, 1989. On March 16, 1989, respondent suffered a work-related injury. At this time, he was approximately two weeks behind in his loan payments. The record does not indicate why the agreed upon payroll deductions did not occur from February 13, 1989, until the date of injury. Respondent notified appellant that he was no longer working and requested that the appropriate papers be sent to him so that the disability insurance company could begin making his required monthly payments during the period of his disability.

3

Respondent received the necessary forms from appellant on March 27, 1989, and promptly completed and returned them. Three weeks later, on April 17, 1989, respondent received a notice from appellant indicating that he was delinquent in payments and that the credit disability insurer had not yet made any payments. Respondent then contacted appellant and was told that the delinquency notice was just a standard letter and that he should not worry because the credit disability insurance payments would be arriving shortly.

Respondent and his family then moved from Oregon to Columbia Falls, Montana. Appellant was aware of this move. On May 24, 1989, appellant caused respondent's vehicle to be repossessed. Respondent obtained legal counsel who sent a letter to appellant demanding the return of the truck which was being held in Missoula and informing appellant that the credit disability payments would be arriving shortly and respondent was going to return to work in June or July. Appellant refused to return the truck, demanded payment in full on the loan, and had the truck transported to Portland, Oregon. The costs of the repossession, storage, and transportation of the truck were added to the outstanding balance on the loan, as were certain legal fees later incurred in this matter.

Shortly after repossession, LACOP, the credit disability insurer, straightened out the problems with the claim and made the first in a series of payments on respondent's behalf. Appellant subsequently acknowledged receipt of $760.01 from LACOP, which was

4

applied to the outstanding balance of the loan. The District Court found that the delay in the credit disability payments was attributable to persons outside the control of respondent. At about this same time, respondent returned to work, and despite the fact that he no longer possessed the truck, three more payroll deductions were applied to the loan, the last deduction occurring on August 21, 1989. Without giving proper notice to respondent, appellant sold respondent's truck for $8000 on August 28, 1989. Appellant did not file an action for a deficiency judgment. Following the sale of the vehicle, appellant continued to receive loan payments which were being deducted from respondent's pay. Appellant applied the last of these payments to the loan on October 30, 1989. Respondent was again forced to leave work because of the previously sustained injury. Someone then informed LACOP that respondent was again not able to work and requested that LACOP start making payments on behalf of respondent. The record does not indicate that LACOP was advised that respondent no longer had the truck. Over the next year, LACOP made payments totaling $4,174.68 to appellant. In October 1990, LACOP was suspended from doing business. However, on April 19, 1991, the Pennsylvania Life and Health Guaranty Association sent appellant a payment on behalf of respondent in the amount of $863.39 which was applied to the loan.

Respondent brought suit alleging that appellant converted his truck and that he had suffered damages as a result of the conversion. The District Court awarded actual damages against

5

appellant in the amount of $18,711.20 based upon its finding that the truck's fair market value at the time of conversion was $11,000 and that the rental value of the truck from the date of conversion was $7,711.20. The District Court then added an additional award of treble damages under the Montana Consumer Protection Act amounting to $56,133.60 for a total damage award of $74,844.80. The court also awarded respondent attorney fees in the amount of $9,540. The final judgment entered against appellant was $84,384.80. This appeal followed in which appellant contests both the District Court's determination regarding conversion and the appropriateness of the damage award.

I

Did appellant's repossession of respondent's vehicle constitute conversion?

On appeal, this Court will not set aside the findings of fact found by a district court sitting without a jury unless they are clearly erroneous. Rule 52(a), M.R.Civ.P. Concerning our review of conclusions of law, this Court will simply determine whether the lower court's interpretation of the law was correct. We are not bound by the trial court's conclusions and remain free to reach our own. Schaub v. Vita Rich Dairy (1989), 236 Mont. 389, 770 P.2d 522.

The District Court applied Oregon law almost exclusively in reaching its decision in this case. The only exception was the application of the Montana Consumer Protection Act. The factual situation in this case could potentially have given rise to a

6

conflict of laws question. However, since neither party has objected, either at trial or on appeal, to the District Court's selection of the law to be applied in this case, this Court will not now address the issue sua sponte.

The District Court determined that appellant had no legal right under the security agreement to repossess the truck and that by repossessing the truck appellant committed the tort of conversion. Appellant argues that pursuant to the terms of the security agreement signed by both parties repossession was proper for any one of several reasons. Appellant relies on several arguments on appeal that were not properly placed before the District Court for consideration and they will not be considered for the first time on appeal. Weaver v. Law Firm of Graybill (1990), 246 Mont. 175, 803 P.2d 1089. Appellant argued before the District Court that repossession was proper because respondent failed to maintain proper insurance on the truck as provided in the agreement. Additionally, appellant argues that respondent's delinquency in payments, both prior to and after respondent's work related injury, justified the repossession.

INSURANCE: The security agreement provided that respondent was to maintain proper insurance on the truck. Respondent failed to do so. The Oregon Uniform Commercial Code at § 79.5030, in a provision identical to § 30-9-503, MCA, provides that "[u]nless otherwise agreed a secured party has on default the right to take possession of the collateral." The District Court found that the security agreement provided that appellant's remedy for failure to

7

insure the collateral was to purchase insurance for the truck and add the cost of the insurance to the outstanding loan. While the agreement might be subject to different interpretations, the District Court's interpretation was not clearly erroneous. The District Court also found that based on subsequent actions taken by appellant, the right to rely on the failure of respondent to obtain insurance as justification for repossession had been waived. In light of our holding on this issue, this Court need not consider these additional matters.

DELINQUENT PAYMENTS: The District Court determined that respondent's delinquency in making payments on the loan did not justify appellant's repossession of the truck. The court relied on two Oregon cases which discussed a secured creditor's right to repossess an automobile in situations in which the debtor had purchased a credit life and disability policy as a part of the sales transaction, as respondent had in this case. In Owens v. Walt Johnson Lincoln Mercury, Inc. (Or. 1978), 574 P.2d 642, the Oregon Supreme Court held that the right of repossession is subordinated to collection of the payments due from the insurer if the debtor is disabled within the terms of the policy. Additionally, repossession may not occur prior to allowing the debtor a fair opportunity to establish eligibility under the coverage. Subsequently, in the case of Carter v. United States Nat'l Bank of Oregon (Or. App. 1989), 768 P.2d 930, the principle in Owens was extended to cover situations in which the applicable disability insurance would not fully cover the loan payments that

8

the debtor would otherwise be required to make. The District Court properly concluded that pursuant to these two cases any post-injury delinquency in payments could not serve as the basis for repossession of the truck.

Appellant argues that Owens and Carter are not dispositive in that respondent was several weeks delinquent prior to sustaining the injury. However, the District Court specifically found that an agent of appellant had communicated to respondent that this short period of delinquency was not a concern and that the disability payments would be arriving soon. This act, combined with others as found by the District Court, is sufficient to waive any right appellant may have had to immediately repossess the truck, prior to respondent's work-related injury.

The findings of fact of the District Court relative to the issue of conversion are not clearly erroneous and its conclusions of law were not incorrect. We affirm the District Court's determination that appellant converted respondent's truck.

II

Did the District Court err in determining respondent's damages?

The District Court awarded actual damages in the amount of $18,711.20 based on its finding that the truck's fair market value at the time of conversion was $11,000 and the rental value of the truck from the date of conversion was $7,711.20. The District Court then awarded an additional $56,133.60 as treble damages under the Montana Consumer Protection Act for a total damage award of

9

$74,844.80. Appellant alleges the District Court erred in determining the value of the truck, in awarding damages for loss of use of the truck, and in awarding treble damages in this situation.

VALUE OF THE TRUCK: The District Court determined that the fair market value of the truck at the time of conversion was $11,000 and awarded that amount to respondent. Appellant agrees that the general rule is that the measure of damages for conversion is the market value of the personal property. However, appellant points out that in Hall v. Work (Or. 1960), 354 P.2d 837, 842-43, the Oregon Supreme Court stated that:

> The general rule for the measure of damages in an action by a mortgagor against a mortgagee for a conversion of the mortgaged property is the difference between the market value of the property at the time of the conversion and the amount of the mortgage debt.

This rule governing damages for the conversion of mortgaged property provides that a mortgagor should only receive damages equal to their interest in the converted property. This is only equitable in that awarding a mortgagor damages in excess of their interest in the mortgaged property would result in a windfall for the mortgagor. However, this case differs from most conversion of mortgaged property cases in that respondent's interest in the truck continued to grow even after the conversion. The District Court refused to reduce the $11,000 fair market value of the truck by the amount outstanding on the loan. The court found that because appellant had not sought a deficiency judgment and had continued to receive payments on the truck it was not necessary to reduce the

10

value by the amount owed. We cannot say that this finding is clearly erroneous.

LOSS OF USE DAMAGES: The District Court awarded loss of use damages in the amount of $7,711.20. Appellant argues that absent rare and unusual circumstances, loss of use damages are not available in conversion actions under Oregon law. In Hall, the Oregon Supreme Court stated that generally the appropriate measure of damages to compensate for loss of use is the fair market value of the property with interest. Hall, 354 P.2d at 842-43. However, the Oregon Supreme Court has recognized that in some special circumstances loss of use damages might be appropriate. In Singer v. Pearson (Or. 1911), 115 P. 158, the Oregon Supreme Court stated:

> "The measure of damages, therefore, in an action of trover, unless plaintiff, by reason of the unlawful act of the defendant, has suffered some special loss or injury, which must be alleged, is the value of the property at the time of the conversion, with interest thereon . . . ."

Singer, 115 P. at 158 (quoting Eldridge v. Hoefer, 77 P. 874).

This is consistent with the general measure of damages for conversion, which is that:

> In the ordinary case, the value of the use of property converted is not regarded as a recoverable item in an action for conversion. This rule generally applies where the property is not returned to the plaintiff, who instead recovers the value of the property . . . . Where interest on the value of the property is awarded, the value of the use of the property . . . may not be recovered in addition thereto, since damages for the use of the property are generally regarded as in lieu of interest.

18 Am Jur 2d, Conversion § 118.

11

The Alaska Supreme Court, relying on the Oregon Supreme Court decision in Hall, has explained the rationale for this rule, stating that:

> [Defendant] argues that [plaintiff], in electing to pursue conversion, effectively abandoned the property to the converter and proceeded to sue for its value. Therefore, he argues since the conversion judgment has been entered and satisfied . . . the title is transferred to her as of the date of conversion, and [plaintiff] can obtain no damages for loss of use after that time. We find this argument to be an accurate representation of the law of conversion.

Rollins v. Leibold (Alaska 1973), 512 P.2d 937, 944-45 (citing Hall v. Work (Or. 1960), 354 P.2d 837).

The District Court did not explain the basis for its award of loss of use damages. On appeal respondent has not cited to any legal authority in support of his contention that he is entitled to loss of use damages in this situation. In this case, respondent will receive the value of the truck plus interest from the date of judgment. The circumstances of this case do not indicate respondent is entitled to damages for loss of use in addition to the value of the truck plus interest. The District Court's award of damages for loss of use is reversed.

TREBLE DAMAGE AWARD: Appellant argues that the treble damage award under the Montana Consumer Protection Act was inappropriate. In the alternative, appellant argues that the District Court erred in its computation of the treble damages. The treble damages should have been three times the actual damages, not three times the actual damages plus the actual damages. Respondent concedes that appellant's contention concerning the computation of the

12

treble damages is correct, but argues that an award of treble damages was appropriate.

Section 30-14-133, MCA, provides that in actions brought under the Consumer Protection Act "[t]he court may, in its discretion, award up to three times the actual damages sustained . . . ." This Court has recently held that the Montana Consumer Protection Act applies to the lending and collecting of money in relation to consumer loans. Baird v. Norwest Bank (Mont. 1992), Cause No. 91-224, decided December 4, 1992. The decision of the District Court in this case to award treble damages was not an abuse of discretion and is affirmed. Respondent's actual damages were $11,000. Under the treble damage provision of § 30-14-133, MCA, the total damage award is $33,000, plus interest from the date of judgment.

## III

Did the District Court err in awarding respondent attorney fees in the action below?

The District Court awarded respondent attorney fees in the amount of $9540. Pursuant to the Montana Consumer Protection Act, § 30-14-133, MCA, respondent, as the prevailing party, is entitled to attorney fees incurred at trial and in defending this appeal. Additionally, the issue of attorney fees was raised and fully discussed by the parties below. Appellant failed to object to the award of attorney fees at that time. In fact, when respondent called a witness to testify to the reasonableness of the attorney fees appellant made such testimony unnecessary by stipulating to

13

the reasonableness of the fees.  Appellant now argues for the first time on appeal that respondent was not entitled to attorney fees. Appellant's failure to make a timely objection when given the opportunity waives the right to now object for the first time on appeal and present an entirely different theory on the issue of attorney fees.  Clemans v. Martin (1986), 221 Mont. 483, 719 P.2d 787.

This matter is affirmed in part and reversed in part, and is remanded to the District Court for entry of an order consistent with this opinion.

_____
Justice

We concur:


_____
Chief Justice


_____

_____

_____

_____
Justices

14

Justice Fred J. Weber specially concurs as follows:

I concur in the majority opinion with the exception of the reasoning set forth in the following paragraphs:

Part II of the majority opinion determines that the decision of the District Court to award treble damages was not an abuse of discretion and is affirmed. In the course of that discussion, the majority makes the following statement:

> This Court has recently held that the Montana Consumer Protection Act applies to the lending and collecting of money in relation to consumer loans. Baird v. Norwest Bank (Mont. 1992), Cause No. 91-224, decided December 4, 1992.

Apparently the reference to Baird is the establishment of a rationale for the application of the Montana Consumer Protection Act to the present case. I do not agree that reference is appropriate as a basis for the opinion.

That was not the legal theory adopted by the District Court in this case. In substance the District Court held that the purchase of credit disability insurance by the plaintiff constituted a purchase of services under the Act, and that the breach was a violation of the Act. Following is a pertinent portion of the District Court opinion:

> . . . The weight of authority when considered in light of the evidence presented supports the finding of fact and conclusion of law that Credit Union in fact committed an unfair and deceptive act in its sale of credit disability insurance to plaintiff and subsequent repossession of the security and continued acceptance of payments deducted from plaintiff's check and the disability carrier after repossession.

I would affirm the District Court's conclusion that there was a breach of the Act in connection with the purchase of the credit

15

disability insurance which constituted a purchase of services as defined under the Act.

I would limit my reference to the Montana Consumer Protection Act to the affirming of the action of the District Court. I do not believe <u>Baird</u> is authority pertinent to the conduct in this case.

_____
Justice


Chief Justice J. A. Turnage, specially concurring:

I concur in the special concurring opinion of Justice Weber.

_____
Chief Justice

16

December 23, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


James M. Ramlow
MURRAY & KAUFMAN, P.C.
P.O. Box 728
Kalispell, MT 59903-0728

DAVID J. WING
Attorney at Law
100 East Broadway
P.O. Box 504
Butte, MT 59703


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy