No. 97-303

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 54



IN RE MARRIAGE OF

GENE M. GUDMUNDSON,

Petitioner, Appellant, and Cross-Respondent,

and

GENG HUI GUDMUNDSON,

Respondent, Respondent, and Cross-Appellant.



APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Robert T. Cummins, Attorney at Law,
Helena, Montana

For Respondent:

Ronald F. Waterman; Gough, Shanahan, Johnson & Waterman;
Helena, Montana



Submitted on Briefs: February 5, 1998
Decided:   March 10, 1998
Filed:


_____
Clerk


Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1    Gene and Geng Hui Gudmundson filed a joint petition for dissolution of their marriage in the District Court for the First Judicial District in Lewis and Clark

County.  The
District Court entered a decree of dissolution which adopted the parties' settlement
agreement.  Geng Hui moved to set aside the judgment, pursuant to Rule 60(b), M.R.
Civ.P.
That motion was not decided by the District Court and, after a notice of entry of
judgment
was filed, Geng Hui made a second motion to set aside the judgment.  After a
hearing, the
District Court held that the first motion was deemed denied, that a second motion
was not
allowed, and that the property distribution portion of the agreement should be
reopened due
to ambiguities in the agreement.  Gene appeals the District Court's order to reopen,
and Geng
Hui cross-appeals the District Court's failure to consider the second Rule 60(b)
motion, and
its failure to set aside the entire agreement.  We reverse the order of the District
Court and
remand to the District Court for further proceedings.

¶2   The sole issue on appeal is whether the District Court erred when it denied
Geng Hui's
motion to set aside the judgment pursuant to Rule 60(b)(3), M.R.Civ.P., and reopened
only
the property distribution portion of the separation agreement.

                            FACTUAL BACKGROUND

¶3   Geng Hui was born and raised in China.  In 1987, she met and married Gene
Gudmundson in China.  The following year they moved to White Sulphur Springs,
Montana,
where Gene had purchased a chiropractic practice.  They had two children, who were
born
in 1988 and 1990.  In 1993, Geng Hui became a citizen of the United States.

¶4   Geng Hui could not speak or read English when she came to Montana.  She
attempted
at first to learn English by watching television and language video tapes,
conversing with
friends, and reading children's books.  When she began formal English studies in
1995, her
reading skills were evaluated at approximately a first-grade level, and her speaking
skills
were at approximately a fourth-grade level.

¶5   Gene and Geng Hui's marital problems led Geng Hui to contact an attorney in 1993
about a possible dissolution.  In September 1994, she moved to Helena for a three-
month
period.  When she returned to live with Gene and the children in White Sulphur
Springs, the
marital problems continued, and in the summer of 1995, they agreed to dissolve their
marriage.

¶6   Gene contacted John Mahan, an attorney who had represented the couple in a land
purchase a few years earlier, to represent them in the dissolution.  Geng Hui

alleges that Gene forced her to agree to their mutual representation by Mahan with a threat that he would use her three-month absence from the home as a basis for denying her custody of the children and any marital property. Gene contends that he merely agreed to pay for Mahan's services and suggested dual representation so that they could both save time and legal expenses.

¶7   Gene and Geng Hui discussed a custody arrangement and property division before they met with Mahan. Gene asserts that Geng Hui fully understood and agreed with all the terms of their informal arrangement, while Geng Hui contends that their discussions were limited and did not lead to a mutual agreement for custody and the distribution of property.

¶8   In approximately June 1995, Gene gave Mahan a written copy of the agreement and asked him to put it into legal form. They all eventually met in Mahan's office, where, according to Mahan, he went over in detail each of the provisions of the agreement with the parties and made sure that they both understood them. He testified by deposition that he explained to each of them the applicable law and their rights, and that he made very clear that he would not handle their case if they did not have a mutual agreement. Mahan also talked to the parties on the telephone and met with them individually at various times during his representation. The only alterations that were made to the initial agreement were the addition of a provision regarding Geng Hui's name change and a provision that Gene would make the house payment every other month "in lieu of child support." The parties signed the agreement on September 21, 1995.

¶9   The couple's main assets include a spa/motel business in White Sulphur Springs, forty acres of unimproved land near White Sulphur Springs, and the family home. All of the properties are encumbered by debt. The parties dispute whether Gene's chiropractic business, which was never mentioned in the agreement, should also be included and considered as a marital asset.

¶10  The agreement awarded Geng Hui the family home and all of its furnishings and effects. Gene signed a quit-claim deed to transfer his interest in the home to Geng Hui. They shared responsibility for the house payments. Gene agreed to make the $504 payment every other month. Gene received full title to the spa/motel and the forty acres of land. In addition, each party kept their respective bank accounts and automobiles, as well as responsibility for the debts on each vehicle. The agreement does not state a value

for any
of the property.

¶11  Gene and Geng Hui agreed upon, and were awarded, joint custody of the children.
The children were to live one week with Gene and the next week with Geng Hui.  The
agreement stated that if either party moved from Meagher County, the party who remained
would retain residential custody of both children.  Finally, it stated that Geng Hui could not
take the children to China without Gene's written consent.  The only obligation for child
support was Gene's obligation to make the house payment every other month.

¶12  On October 26, 1995, the parties and Mahan appeared in chambers before the District
Court with their petition for dissolution and the separation agreement.  Geng Hui was visibly
upset, and Judge Sherlock, who became aware of her trouble speaking English, asked her if
she wanted to continue or whether she wanted to get her own attorney.  She stated that she
wanted to continue.

¶13  Judge Sherlock noted that her primary concern was about debt and the fact that she
had no income with which to pay.  The agreement stated that the parties' debt obligations
were "listed on Schedule 'A' attached to this agreement," but there was no Schedule A.  After
discussion with the parties, Judge Sherlock modified the agreement by deleting the reference
to Schedule A and by including language that the debt obligations "shall be paid by [Gene]."
Both Judge Sherlock and Gene initialed the modification, but Geng Hui did not.  Judge
Sherlock later testified that he believed the change was to cover all debts, including the
family home, and that he was not made aware of the fact that Geng Hui remained liable for
house payments every other month.  He also testified that he did not inquire about child
support calculations or whether the agreement was unconscionable because when the parties
have agreed, it is not his practice to "second-guess the numbers."

¶14  That same day, the District Court made its findings of fact, conclusions of law, and
a decree of dissolution in which it approved the agreement between the parties.  No notice
of entry of judgment was filed at that time.

¶15  After she retained new counsel, Geng Hui filed a Rule 60(b), M.R.Civ.P., motion on
July 3, 1996, to set aside the District Court's October 26, 1995, findings, conclusions, and

decree. She asserted that Gene engaged in misrepresentation, fraud, and other misconduct in preparation of the agreement, and that the agreement failed to value the marital estate and to make child support calculations pursuant to the Uniform Child Support Guidelines. Gene, who also had retained new counsel, moved to dismiss the motion on the grounds that it was not timely. On October 29, 1996, the District Court concluded that since no notice of entry of judgment was ever filed in the case, Geng Hui's motion was timely and, therefore, it denied Gene's motion to dismiss. The District Court failed, however, to rule on Geng Hui's motion. Furthermore, Judge Sherlock recused himself from the case, and Judge Honzel eventually assumed jurisdiction over the matter.

¶16  On November 25, 1996, Gene filed a notice of entry of judgment. On December 6, 1996, Geng Hui renewed her Rule 60(b) motion. The District Court conducted a hearing on January 29 and 30, 1997, at which Judge Sherlock, the parties, and others testified regarding the agreement and decree.

¶17  On February 4, 1997, the District Court issued its findings of fact, conclusions of law, and order, along with a memorandum explaining its decision. It found that a number of things had not been mentioned in the separation agreement, such as the parties' incomes, child support calculations, the chiropractic business, and the property values, and that the agreement referred to certain schedules which were, in fact, never attached. It concluded that there were ambiguities and/or mistakes in the agreement related to the parties' debt responsibilities that warranted a reopening of the agreement as it pertained to the property distribution. It also concluded that Geng Hui's original motion should be deemed denied because it was not decided within sixty days, and that there was no authority for consideration of a second motion.

DISCUSSION

¶18  Did the District Court err when it denied Geng Hui's motion to set aside the judgment pursuant to Rule 60(b)(3), M.R.Civ.P., and reopened only the property distribution portion of the separation agreement?

¶19  We review a district court's conclusions of law to determine whether its interpretation of the law is correct. See Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686; see also Kreger v. Francis (1995), 271 Mont. 444, 447, 898 P.2d

672, 674; Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

¶20 Here, the District Court held that because Geng Hui's initial Rule 60(b)(3) motion had not been ruled on within sixty days as required by Rule 60(c), M.R.Civ.P., it was deemed denied. It failed to consider her second Rule 60(b)(3) motion because it "was not aware of any rule or [case] which allows a party to file a second Rule 60(b) motion after the sixty days has run." Nonetheless, despite the fact that she had not filed such a motion for relief, the District Court went on to consider whether Geng Hui was entitled to relief pursuant to the residual clause of Rule 60(b), which states:

> This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as may be required by law, or to set aside a judgment for fraud upon the court.

> It held, pursuant to our decision in In re Marriage of Doyle (1996), 280 Mont. 429, 929 P.2d 886, that she was not entitled to relief pursuant to the residual clause.

¶21 Geng Hui contends that pursuant to our holding in Ring v. Hoselton (1982), 197 Mont. 414, 643 P.2d 1165, the District Court erred when it failed to disregard her first Rule 60(b) motion and consider it a nullity because the notice of entry of judgment had not yet been filed. Hoselton, however, involved a Rule 60(b) motion that had been filed before the judgment was final. See Hoselton, 197 Mont. at 424, 643 P.2d at 1171. The judgment in this case was clearly final as of October 1995, well before Geng Hui's first Rule 60(b) motion and, therefore, Hoselton does not apply. Geng Hui has provided no other grounds by which the District Court or this Court might simply disregard her first Rule 60(b) motion so as to avoid denial pursuant to Rule 60(c), M.R.Civ.P., for the District Court's failure to rule on it within the required sixty days. Accordingly, we reject the notion that because the motion was filed prior to the notice of entry of judgment it should be considered a nullity. We conclude that the District Court did not err when it deemed her first Rule 60(b) motion denied.

¶22 However, we disagree with the assumption made by both Geng Hui and the District Court that the denial of her first motion renders her second Rule 60(b) motion ineffective.

Rule 60(b), M.R.Civ.P., states in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . .

The

> motion shall be made within a reasonable time, and for reasons (1), (2), and (3) when a defendant has been personally served, whether in lieu of publication or not, not more than 60 days after the judgment, order or proceeding was entered or taken, or, in a case where notice of entry of judgment is required by Rule 77(d), not more than 60 days after service of notice of entry of judgment.

The plain language of the rule does not limit the number of motions that a party may make, nor prescribe the earliest date following judgment on which the motion may be filed. The only restriction and possible bar to a motion made pursuant to Rule 60(b)(3) is that it cannot be filed "more than 60 days after service of notice of entry of judgment." Here, the second motion was filed within the permitted time frame.

¶23 The District Court correctly noted when it denied Gene's motion to dismiss the first Rule 60(b) motion that when a party has made an appearance, Rule 77(d), M.R.Civ.P., requires that notice of entry of judgment be served. As such, the sixty-day period did not begin to run until the notice of entry of judgment was filed on November 25, 1996. Geng Hui's second motion was filed within sixty days from that date. Therefore, while Rule 60(c) requires that Geng Hui's first motion be deemed denied, we conclude that neither its denial nor any of the time limits provided for by Rule 60 limited her ability to make a second Rule 60(b)(3) motion or the District Court's ability to consider her second motion.

¶24 Pursuant to that motion, the District Court should have considered whether to set aside the agreement on the basis of fraud, misrepresentation, or misconduct. Thus, it erred when it failed to do so and instead relied on ambiguity and/or mistakes to partially reopen the agreement. We therefore remand to the District Court for specific findings regarding those allegations, and for a decision whether to reopen the dissolution proceedings pursuant to Rule 60(b)(3), M.R.Civ.P.

¶25 If the District Court concludes that the prior decree should be set aside pursuant to Rule 60(b)(3), M.R.Civ.P., it should then consider whether the agreement entered into by the parties is unconscionable. See 2§ 40-4-201(2), MCA. Contrary to the parties'

assertions on appeal, we are not in a position to determine as a matter of law whether the agreement was unconscionable.

¶26   For example, Geng Hui contends that the agreement is unconscionable as a matter of law because she had a limited understanding of English, because Mahan represented both her and Gene, and because it does not include a statement of the parties' incomes, any valuation of the property, or child support calculations. We have stated, however, that unconscionability is to be determined by the district court on a case-by-case basis.  See In re Marriage of Hagemo (1988), 230 Mont. 255, 259, 749 P.2d 1079, 1082.  Accordingly, it is within the district court's discretion to determine from the evidence whether the agreement is unconscionable.  See In re Marriage of Brown (1997), 283 Mont. 269, 272-73, 940 P.2d 122, 124.

¶27  Likewise, we reject Gene's contention that the District Court is estopped as a matter of law from finding that the agreement is unconscionable because of its initial finding that the agreement was not unconscionable.  Judge Sherlock testified that he did not make a specific inquiry into whether the agreement was unconscionable because it is not his practice to do so when the parties have reached a separation agreement.  We hold that where a district court failed to make an initial investigation of the conscionability of an agreement, a district court is not estopped from later finding that the agreement is unconscionable if the decree adopting the agreement is set aside pursuant to Rule 60(b)(3), M.R.Civ.P.

¶28  We reverse the order of the District Court and remand to the District Court for proceedings consistent with this opinion.

/S/  TERRY N. TRIEWEILER

We Concur:

/S/  JAMES C. NELSON
/S/  JIM REGNIER
/S/  WILLIAM E. HUNT, SR.
/S/  KARLA M. GRAY