**FILED**

January 29 2013

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 12-0165

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 15

TAMARA LUCAS and JAMES LUCAS,

        Plaintiffs and Appellants,

   v.

MAT STEVENSON,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-11-1484
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant Tamara Lucas:

        Tamara Lucas (Self-Represented), Kalispell, Montana

        For Appellee:

        Reid J. Perkins, Worden Thane P.C., Missoula, Montana

Submitted on Briefs:   November 28, 2012

Decided:   January 29, 2013

Filed:

_____
                    Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Tamara Lucas[1] (Tamara) appeals from an order of the Fourth Judicial District Court, Missoula County, granting summary judgment to attorney Mat Stevenson (Stevenson) on a legal malpractice claim brought by Tamara and her husband, James Lucas (James). We affirm.

## ISSUE

¶2 Tamara raised two issues on appeal. The first issue concerned whether the District Court should have allowed Tamara to supplement the record by introducing additional evidence in the form of CDs and photographs. We denied Tamara's motion to supplement the record in this Court's August 21, 2012 order. We restate the sole issue remaining on appeal as follows:

¶3 Whether the District Court erred in granting Stevenson's summary judgment motion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 This case involves various allegations of legal malpractice. On October 28, 2004, Tamara was involved in a car accident in Flathead County. She was arrested and charged with driving under the influence of alcohol. James went to see Tamara at the Kalispell Police Department booking area. According to police officers, James was under the

---

[1] Tamara, who is not an attorney, purports to bring this appeal on behalf of herself and her husband, James Lucas. However, Tamara is a self-represented litigant. Therefore, she may only act on her own behalf and may not bring claims on behalf of any other person or represent any other person before this Court. Accordingly, we consider only Tamara's individual claims on appeal. *See Weaver v. Graybill, Ostrem, Warner & Crotty*, 246 Mont. 175, 178, 803 P.2d 1089, 1091 (1990).

influence of alcohol or drugs and was highly confrontational. The police officers told James that he could visit his wife once she was booked and transported to the Flathead County Department of Corrections. James refused to leave and was arrested for obstructing a peace officer. James attempted to kick one of the police officers in the face while the officer searched him for weapons. He made contact with the officer's shoulder and chest and was subsequently taken to the ground by the officers. James alleged that the police officers slammed his head on the concrete floor, causing him permanent brain damage and injuries. James was charged with the additional offenses of disturbing the peace and felony assault on a peace officer.

¶5 The Lucases hired Stevenson to defend James against the criminal charges. Stevenson later agreed to represent the Lucases in a civil action against the police officers involved in the altercation and the City of Kalispell.

¶6 On June 23, 2005, the Lucases jointly filed for Chapter 13 bankruptcy. Their bankruptcy case was subsequently converted to a Chapter 7 proceeding on March 15, 2006. Richard Samson (Samson) was appointed trustee for the bankruptcy estate. Penny Leatzow (Leatzow) represented the Lucases in their bankruptcy proceedings. The Lucases originally disclosed their civil lawsuit as an asset under Schedule B in the bankruptcy proceedings, but later amended the Schedule to remove the claim. The Lucases told Samson that they had discussed a possible civil action against the City of Kalispell with several different attorneys and law firms and believed that their claims were without merit based on those consultations. The bankruptcy action was closed on June 21, 2006.

3

¶7 According to Stevenson, his representation of the Lucases concerning their civil claims began in the fall of 2006. On October 30, 2006, Stevenson filed a complaint on behalf of James against defendants Kalispell Police Department, the City of Kalispell, and the individual police officers that arrested James. Stevenson filed an amended complaint on January 23, 2007, that included Tamara as a plaintiff. The amended complaint included claims of assault and battery, negligence, negligence per se, negligent hiring and training, negligent supervision, and loss of consortium. Stevenson associated attorney John Velk (Velk) to assist with the litigation.

¶8 In January 2009, Stevenson and Velk first learned of the Lucases' bankruptcy proceeding and contacted Samson to inquire whether the Lucases' pending civil case might be an asset of the bankruptcy estate. Upon discovering that the Lucases were pursuing their personal injury claims in spite of their previous representations to the contrary, Samson moved to reopen the bankruptcy proceedings so that the previously undisclosed asset could be administered. The bankruptcy court reopened the case on February 2, 2009.

¶9 Once the civil action was determined to be an asset of the bankruptcy estate, Samson asked Stevenson and Velk to stop working on the case for Tamara and James. Samson filed an application to appoint Stevenson and Velk as attorneys for the trustee to continue to pursue the case against the Kalispell Police Department, the City of Kalispell, and the individual police officers. The bankruptcy court approved the appointment on October 26, 2009. From that date forward, Stevenson and Velk represented the trustee and the bankruptcy estate.

4

¶10 Stevenson and Velk held a settlement conference with the City of Kalispell. The bankruptcy estate agreed to accept $98,000 as a full and final settlement. Leatzow negotiated on behalf of the Lucases to determine how much of the settlement would be paid to the Lucases. On January 23, 2010, Samson filed a Notice of Trustee's Motion to Approve Compromise Settlement with the bankruptcy court. The Notice was sent to Leatzow and stated that any objection to the settlement must be raised within 14 days. The bankruptcy court approved the settlement without objection on February 10, 2010. On March 16, 2010, the Lucases received a check for $31,947.68, with the remaining settlement funds being paid to creditors, trustee fees, and attorney fees and costs.

¶11 On November 16, 2011, Tamara filed a complaint as a self-represented litigant in Montana's Fourth Judicial District Court, Missoula County, alleging that Stevenson failed to press criminal charges against the police officers, never took depositions of the police officers, failed to investigate and prove James' innocence, failed to add Tamara as a plaintiff, and mismanaged litigation funds. Tamara requested $700,000 for Stevenson's alleged violations of the rules of professional conduct. Stevenson filed a motion to dismiss and motion for summary judgment. The District Court held a hearing on the summary judgment motion on February 14, 2012. After hearing the parties' arguments, the District Court granted summary judgment to Stevenson on February 16, 2012. Tamara appeals from the grant of summary judgment.

## STANDARDS OF REVIEW

¶12 We review a district court's ruling on a motion for summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as did the district court. *Estate of Willson*

5

*v. Addison*, 2011 MT 179, ¶ 11, 361 Mont. 269, 258 P.3d 410. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3).

**DISCUSSION**

¶13 *Did the District Court err in granting Stevenson's motion for summary judgment?*

¶14 The District Court determined that the Lucases' civil claims were properly determined to be an asset of the bankruptcy estate. The District Court further concluded that Stevenson did not represent the Lucases at the time the claims were settled, and therefore they had no standing to bring a legal malpractice claim against him. Relying on the Notice of Trustee's Motion to Approve Compromise Settlement and the accompanying certificate of service, the District Court rejected the Lucases' argument that they did not receive notice of the settlement.

¶15 On appeal, Tamara reiterates her arguments that Stevenson committed legal malpractice in the following ways: he never investigated James' incident at the police station, he scared the Lucases into pleading no contest in the criminal matter by saying they would not get a fair trial in Kalispell, he never deposed the police officers, he did not press charges against the police for assault, he did not frame the Lucases' civil suit in terms of civil rights and police brutality, he allowed the statute of limitations to expire, he stole money meant for James' doctor bills, and nothing was sent to Tamara to allow her to contest the settlement. Stevenson maintains that the Lucases lack standing to assert their claims because he owed them no duty at the time of the settlement agreement.

6

Stevenson further contends that the Lucases waived their right to object to the settlement agreement. Lastly, Stevenson argues that the Lucases are essentially attempting to hold him liable for the alleged malpractice of their bankruptcy attorney, Leatzow.

¶16 Since "standing is a threshold, jurisdictional requirement," it is where we begin our analysis. *Heffernan v. Missoula City Council*, 2011 MT 91, ¶ 29, 360 Mont. 207, 255 P.3d 80. The question of standing addresses whether a litigant is entitled to have the court decide the merits of a particular dispute. *Chipman v. Northwest Healthcare Corp.*, 2012 MT 242, ¶ 25, 366 Mont. 450, 288 P.3d 193; *Williamson v. Mont. PSC*, 2012 MT 32, ¶ 28, 364 Mont. 128, 272 P.3d 71. Under Montana law, the complaining party must clearly allege past, present, or threatened injury to a property or civil right, and the alleged injury must be one that would be alleviated by successfully maintaining the action. *Williamson*, ¶ 28; *Heffernan*, ¶ 33. This Court has adopted prudential rules under which a litigant may assert only her own rights. *Williamson*, ¶ 28; *Heffernan*, ¶ 33.

¶17 Many of the claims asserted by Tamara against Stevenson must be dismissed for lack of standing. A pro se litigant cannot represent or appear on behalf of another person or entity. *Zempel v. Liberty*, 2006 MT 220, ¶ 18, 333 Mont. 417, 143 P.3d 123; *Weaver v. Graybill, Ostrem, Warner & Crotty*, 246 Mont. 175, 178, 803 P.2d 1089, 1091 (1990). Acting as a self-represented litigant, Tamara may only represent herself and may not assert any claims on behalf of her husband, James. Stevenson represented James in relation to the criminal charges, so Tamara lacks standing to seek relief on his behalf. This conclusion precludes consideration of Tamara's allegations that Stevenson failed to investigate James' criminal case or mishandled that matter in any other way.

¶18 Standing also prevents our consideration of Tamara's allegations that relate to the civil action. When the Lucases filed for bankruptcy on June 23, 2005, the filing created a bankruptcy estate that included "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541. Assets of the bankruptcy estate broadly include any of the debtor's causes of action. *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001). If a cause of action accrued prior to a debtor's petition date, it is an asset of the bankruptcy estate that must be scheduled. *In re Brown*, 363 B.R. 591, 604 (Bankr. D. Mont. 2007); *Cusano*, 264 F.3d at 947.

¶19 The Lucases' civil claims were an asset of the bankruptcy estate because the claims accrued before the Lucases filed for bankruptcy. *See* § 27-2-102(1)(a), MCA ("[A] claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action."). In fact, the Lucases originally disclosed their civil cause of action as an asset when they filed for bankruptcy, but later decided to remove it from the bankruptcy estate on the representation that it was meritless. In fall 2006, after the bankruptcy case was initially closed, Stevenson began pursuing the Lucases' civil claims without knowledge of their bankruptcy.

¶20 At all times during Stevenson's representation and pursuit of the civil cause of action in question, the cause of action was actually the property of the bankruptcy estate and did not belong to the Lucases. Stevenson learned of his clients' bankruptcy proceedings in January 2009, and was later reassigned to pursue the case on behalf of the

8

bankruptcy estate. Stevenson settled the claims while representing the bankruptcy estate. Any cause of action stemming from his pursuit and settlement of these claims belongs to his client, the bankruptcy estate.

¶21 "For [an individual plaintiff] to have standing, he, rather than the bankruptcy estate, must own the claim upon which he is suing." *Cusano*, 264 F.3d at 945. At no time during the pendency of Tamara's civil action against the City of Kalispell did Tamara actually own the claim she hired Stevenson to pursue. Accordingly, under this anomalous set of facts, we hold that Tamara does not have standing to assert her legal malpractice claims against Stevenson concerning his handling of the civil claims that belonged to the bankruptcy estate at all pertinent times.

¶22 Tamara further alleges that she did not receive notice of the settlement agreement. However, the record shows that the proposed settlement agreement was sent to her bankruptcy attorney, Leatzow, and no timely objections were made. The fact that the Lucases accepted payment of a portion of the settlement funds further undermines Tamara's argument. Any claims that her attorney failed to inform her of the settlement agreement and did not allow her the opportunity to object, would be matters between Tamara and Leatzow, not Stevenson.

¶23 Tamara's remaining allegations similarly fail to set forth a prima facie case of legal malpractice or establish a genuine issue of material fact that would preclude summary judgment. Tamara contends that Stevenson violated the rules of professional conduct by engaging in a conflict of interest and mismanaging client funds. We have previously recognized that violation of the Montana Rules of Professional Conduct does

9

not create a private cause of action or a presumption that a legal duty has been breached. *See Carlson v. Morton*, 229 Mont. 234, 237-38, 745 P.2d 1133, 1135-36 (1987).

## CONCLUSION

¶24    For the foregoing reasons, we affirm the District Court's grant of summary judgment in favor of Stevenson.


/S/ Patricia O. Cotter

We Concur:


/S/ Mike McGrath
/S/ Beth Baker
/S/ Michael E Wheat
/S/ Brian Morris