FILED

March 24 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0483

DA 14-0483

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 92

JOHN PATRICK STOKES,

        Plaintiff and Appellant,

  v.

GREG W. DUNCAN and KATHLEEN M. GLOVER,

        Defendants and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV-2012-156
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Edward A. Murphy, Murphy Law Offices, PLLC, Missoula, Montana

        For Appellees:

            Michael F. McMahon, Denny K. Palmer, McMahon, Wall
& Hubley, PLLC, Helena, Montana

                    Submitted on Briefs:  February 11, 2015
                           Decided:  March 24, 2015

Filed:

_____
                    Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     John Stokes appeals from the District Court's order of July 23, 2014 granting summary judgment to Greg Duncan and Kathleen Glover.  We affirm.

¶2     The issue on appeal is whether the District Court erred in granting summary judgment to Duncan and Glover.

## BACKGROUND

¶3     In 2008 a jury in a defamation case in Flathead County returned a verdict against John Stokes for approximately $4 million.  Stokes appealed the judgment in the defamation case to this Court, and in February 2009 retained attorney Greg Duncan to advise him on how to maintain his appeal of the judgment while discharging the obligation in bankruptcy.  Stokes contends that Duncan advised him that he could discharge the judgment in bankruptcy and maintain his appeal.  In March 2009 Duncan filed a Chapter 11 bankruptcy petition on Stokes' behalf in the United States Bankruptcy Court for the District of Montana.  After a meeting of creditors in April 2009, Duncan moved to withdraw as Stokes' attorney in the bankruptcy because of disagreements with Stokes over who was responsible for Stokes' incomplete disclosure of assets.  In June 2009 the Bankruptcy Court granted Duncan's motion to withdraw and Stokes proceeded with the bankruptcy proceeding.  In September 2009 the Bankruptcy Court granted the motion of the United States Bankruptcy Trustee, converting Stokes' proceeding from a Chapter 11 to Chapter 7 bankruptcy and appointing a Trustee.[1]

---

[1] The Trustee subsequently dismissed the appeal to this Court.

¶4	On February 28, 2012, while the bankruptcy was pending, Stokes filed the complaint in the present action in Montana District Court against Duncan and his paralegal Kathleen Glover. Stokes sought damages for legal malpractice, breach of contract and breach of fiduciary duty. The complaint alleges that Duncan failed to advise Stokes that the defamation judgment would not be discharged by filing bankruptcy, and that he would lose control over the appeal of that case. The bankruptcy Trustee moved to intervene in this action as the real party in interest, claiming the malpractice action as an asset of the bankruptcy estate. In May 2012 the District Court granted the Trustee's motion to stay all proceedings in the malpractice action.

¶5	In the bankruptcy action, the Trustee proposed to sell the bankruptcy estate's interest in Stokes' state court action against Duncan and Glover. The Bankruptcy Court approved the sale of the action at auction. Duncan outbid Stokes and in September 2012 purchased the bankruptcy estate's interest in the action for $12,000. The Trustee sold the bankruptcy estate's interest in the malpractice action to Duncan "as is" with no warranty of title. The Bankruptcy Court approved the sale to Duncan and no party challenged the transaction.

¶6	In October 2012 Duncan and Glover petitioned the Bankruptcy Court for an order declaring that the malpractice claim was the property of the bankruptcy estate and that it had been sold to Duncan. Stokes' Chapter 7 bankruptcy proceeding was discharged in January 2013, and in February 2013 the Bankruptcy Court granted Duncan and Glovers' motion for summary judgment on their petition. The Bankruptcy Court reviewed the law governing the determination of when a cause of action becomes an asset of the

3

bankruptcy estate, and considered Stokes' argument that the suit against Duncan and Glover did not accrue prior to bankruptcy because he was not damaged until his bankruptcy was converted to a Chapter 7 proceeding. The Bankruptcy Court examined Stokes' complaint in the malpractice action and determined that "[m]uch of this alleged malpractice took place prior to the filing of [Stokes'] Chapter 11 petition." The Court explained: "A fair reading of the complaint in [the malpractice action] shows clearly that the malpractice in the form of advice and preparation of Stokes' schedules occurred prior to the filing of the Chapter 11 petition, with further malpractice after the petition." Given the "broad scope" of Federal bankruptcy law in 11 USC § 541, the Bankruptcy Court concluded that Stokes' claims against Duncan and Glover in State court were property of the bankruptcy estate that had been purchased by Duncan.

¶7     Stokes appealed to the United States Bankruptcy Appellate Panel of the Ninth Circuit. In September 2013 the Appellate Panel vacated the Bankruptcy Court judgment, holding that the Court lacked subject matter jurisdiction to determine ownership of the malpractice action against Duncan and Glover because it had been sold and was no longer part of the estate.

¶8     In October 2013 Duncan and Glover appeared in the State District Court malpractice action and moved to lift the stay and for summary judgment. In July 2014 the District Court lifted the stay and granted Duncan and Glover's motion for summary judgment, holding that Stokes' claims against them were property of the bankruptcy estate and had been purchased by Duncan. Stokes appeals.

4

## STANDARD OF REVIEW

¶9     This Court reviews a district court's decision on a motion for summary judgment using the same criteria as the district court under Rule 56, M. R. Civ. P. We review the district court's conclusions of law to determine whether they are correct and the findings of fact to determine whether they are clearly erroneous. *Pilgeram v. Greenpoint Mort. Funding*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839.

## DISCUSSION

¶10     *Issue: Whether the cause of action against Duncan and Glover is now owned by Stokes or by Duncan.*

¶11     Filing a bankruptcy petition creates an estate in bankruptcy consisting of all legal and equitable interests held by the debtor as of the commencement of the bankruptcy action. 11 USC § 541; *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001). The bankruptcy estate includes any of the debtor's civil causes of action that "accrued" prior to the date of the petition. These pending claims belong to the estate and not the debtor. *Lucas v. Stevenson*, 2013 MT 15, ¶ 18, 368 Mont. 269, 294 P.3d 377.

¶12     While courts "look to" state law to determine when a cause of action accrues, bankruptcy accrual does not necessarily coincide with accrual of the claim for purposes of applying the statute of limitations under state law. A claim can accrue for Federal bankruptcy purposes before the state statute of limitation has begun to run. *Cusano*, 264 F.3d at 947; § 27-2-102, MCA (specifying the elements of claim accrual for purposes of the statute of limitations). Under Federal bankruptcy law, a debtor's legal claim can be an asset of the bankruptcy estate if it is "sufficiently rooted in the pre-bankruptcy past."

5

*In re Brown*, 363 B.R. 591, 607-08 (U.S. Bank. Ct., D. Mont. 2007). A claim is "sufficiently rooted" if the "wrongdoing and redressable harm occurred before or at the time of filing, even though other damage was alleged to have occurred postpetition." *Brown*, 363 B.R. at 608-09.

¶13 Stokes' complaint against Duncan and Glover alleges that Stokes was damaged by Duncan's erroneous advice concerning the effects of filing a petition in bankruptcy. While Stokes contends that his claims did not accrue because he was not damaged until later in his bankruptcy proceeding, "it is not necessary to know immediately the type and extent" of injury, and "[a]ll that is needed is a specific and concrete risk of harm to the party's interest." *In re Swift*, 129 F.3d 792, 795-96 (5th Cir. 1997).

¶14 Stokes argues on appeal that his legal injury or damage did not occur until his petition was converted from Chapter 11 to Chapter 7 because of Duncan's negligence. But this is inconsistent with the allegations of his complaint. In part, the complaint alleged that Duncan negligently failed to advise Stokes "that *filing* for bankruptcy could *never be successful* in discharging the Defamation Judgment and that the bankruptcy petition could *never accomplish the results Stokes sought* by filing the bankruptcy." The complaint also alleged that Duncan either knew or should have known that, "upon *filing of the bankruptcy petition,* the appeal of the Defamation Judgment would be within the control of the bankruptcy trustee and that Stokes would require the bankruptcy court's permission to continue pursuit of any appeal." (Emphases added.)

¶15 Although Stokes emphasizes on appeal the damage he allegedly sustained upon conversion to Chapter 7, Stokes acknowledges that—even under Chapter 11—his state

6

court appeal could not have advanced unless the Bankruptcy Court granted a motion to modify the stay. 11 U.S.C.A. § 362. This demonstrates that Stokes lost the ability to control his own appeal at the moment the bankruptcy petition was filed. *In Re Alvarez*, 224 F.3d 1273, 1277 (11th Cir. 2000).

¶16　As the court noted in *Brown*, a claim accrues under Montana law for purposes of determining whether it is a bankruptcy estate asset "when an action can be brought[,]" even if "limitations on such an action had not yet begun to run." *Brown*, 363 B.R. at 605-06. Stokes' malpractice complaint alleged damages for Duncan's negligent acts both pre- and post-filing, including the claim that "he incurred unnecessary fees in *filing for bankruptcy*." (Emphasis added.) Even if his post-petition damages continued to mount due to separate acts of negligence post-petition, Stokes alleged claims that are sufficient on their face to demonstrate that he was damaged and could have brought an action against Duncan at the time the petition was filed.

¶17　We are assisted in this matter by the decision of the United States Bankruptcy Court determining that as a matter of Federal bankruptcy law Stokes' claims were part of the bankruptcy estate. While that decision was vacated on appeal, the appellate decision was not based upon the merits of the analysis, but upon the fact that the asset was no longer in the estate. Stokes' claims against Duncan and Glover accrued at or before the filing of the bankruptcy petition, were sufficiently rooted in the pre- bankruptcy past, and were therefore an asset of the estate in bankruptcy. The Trustee was authorized to sell the claims and did so. The claims do not belong to Stokes and the District Court properly granted summary judgment to Duncan and Glover.

7

¶18    Affirmed.


/S/ MIKE McGRATH

We Concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA


Justice Cotter, dissenting.

¶19    I dissent from the Court's decision to affirm the entry of summary judgment in favor of Duncan and Glover.   The question of when Stokes' claims against Duncan and Glover accrued requires resolution of factual issues and thus is not amenable to summary judgment.

¶20    As the Court notes in ¶ 13 of its Opinion, Stokes contends that his claims did not accrue at or before the filing of the Chapter 11 bankruptcy, because he was not damaged until later in his bankruptcy proceeding.  Specifically, he alleges that he did not suffer damage until after the Bankruptcy Court Trustee converted his Chapter 11 bankruptcy to a Chapter 7 proceeding.  This occurred approximately 6 months after Duncan filed the Chapter 11 bankruptcy petition on Stokes' behalf.  Stokes maintains that because adverse legal results occurred well after the filing of the petition, his malpractice claim against Duncan is not an asset of the bankruptcy estate.   Although Stokes attributes the involuntary conversion from Chapter 11 to Chapter 7 to Duncan's negligence—a contention that Duncan denies—we need not reach the issue of blame for the conversion

8

at this juncture. The only question for resolution at this point is whether Stokes' claims against Duncan and Glover are owned by him or the bankruptcy estate. The determination of ownership of these claims hinges upon the time at which Stokes' claims against Duncan and Glover accrued.

¶21 Relying on *In re Brown*, the Court concludes that Stokes' malpractice claim is "sufficiently rooted in the prebankruptcy past" so as to belong to the bankruptcy estate. Opinion, ¶¶ 12, 17. In *Brown,* citing *In re Alvarez*, 224 F.3d 1273, 1278-79 (11th Cir. 2000), the United States Bankruptcy Court for the District of Montana observed that claims are "sufficiently rooted" in the debtor's prebankruptcy past "where the wrongdoing and redressable harm occurred before or at the time of filing" of the petition. *Brown*, 363 B. R. at 609. The Court in *Alvarez* upheld a District Court's determination that Alvarez's legal malpractice cause of action was the property of his bankruptcy estate because the crux of his claim was Alvarez's contention that his attorneys disregarded his instructions to file a Chapter 11 case and instead filed a liquidating bankruptcy case under Chapter 7. The *Alvarez* court concluded Alvarez's legal malpractice claim came into fruition or accrued at the precise moment the Chapter 7 petition was filed because his harm occurred at that point. *Alvarez*, 224 F.3d at 1277.

¶22 In contrast to the *Alvarez* situation, Stokes contends that he suffered no immediate harm when Duncan filed his Chapter 11 petition, as he still had the opportunity to amend his petition and schedules at any time before the closing of the case. In the words of *Brown,* he had no "redressable harm" at the time the Chapter 11 petition was filed. Stokes maintains that the damage to him did not occur until the conversion of his case

9

from a Chapter 11 to Chapter 7, months after the initial petition was filed, at which point he lost complete control of his assets, his radio station was sold out from under him, and his appeal of the defamation judgment against him was dismissed by the trustee.

¶23    Stokes' argument that his harm did not accrue until the conversion to Chapter 7 occurred has arguable legal merit.  As observed in a footnote by the Court of Appeals in *Alvarez*, "[t]he legal consequences of . . . creating a Chapter 7 estate are quite different than those attendant to a Chapter 11 petition . . . .  Chapter 7 establishes a . . . radical solution to indebtedness, requiring the liquidation of the debtor's property . . . .  In a Chapter 11 case, the debtor-in-possession generally manages and administers his own bankruptcy estate, with the goal of reorganizing his affairs rather than liquidating them." (Internal citations omitted.)  *Alvarez*, 224 F.3d at 1277, FN 9.

¶24    If Stokes maintained control over his property and affairs while the Chapter 11 petition was pending and the actionable harm did not occur until the conversion to Chapter 7,  then Stokes' cause of action against Duncan and Glover would be deemed a post-petition cause of action.  Post-petition causes of action are not part of the bankruptcy estate.  *Brown*, 363 B.R. at 608, citing *In re Witko*, 374 F.3d 1040, 1042 (11th Cir. 2004).  As stated in *Witko*, if at the time the bankruptcy petition is filed a petitioner has not yet suffered harm, his legal malpractice claim did not yet exist and thus it was not the property of the bankruptcy estate.  *Witko*, 374 F.3d at 1044.

¶25    In my judgment, the Court errs in disregarding Stokes' accrual argument and summarily concluding that Stokes' claims against Duncan and Glover accrued at or before the filing of the Chapter 11 bankruptcy petition.  Because there are conflicting

assertions regarding when Stokes' claims accrued, I would reverse and remand to the District Court for resolution of these factual disputes. I therefore dissent from the Court's determination that summary judgment was appropriate.

/S/ PATRICIA COTTER